## AUSTIN ST. RY. CO. v. CALHOUN.
(No. 6723.)

(Court of Civil Appeals of Texas. San Antonio. March 29, 1922. Rehearing Denied April 19, 1922.)

1. Appeal and error ⬅➡563—Questions and answers from reporter's notes not a "statement of facts."

Questions and answers taken from the official reporter's notes, even if signed by attorneys on both sides and approved by the trial judge, do not constitute a sufficient statement of facts required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 2068, 2069.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Statement of Facts.]

2. Appeal and error ⬅➡548(2)—Errors in evidence cannot be considered in absence of a statement of facts.

Error in evidence cannot be considered on appeal in the absence of a statement of facts.

3. Appeal and error ⬅➡548(6) — Appellate court cannot consider errors in instructions relating to a city ordinance in absence of statement of facts.

An appellate court cannot consider errors in instructions relating to a city ordinance of which it has no lawful knowledge, in the absence of a statement of facts.

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Appeal and error ☞536—Bill of exceptions not approved by a trial judge or otherwise legally proved cannot be considered.**

Under Rev. St. art. 2063, requiring a bill of exceptions to be signed by the trial judge, a city ordinance contained in a bill of exceptions not signed by the judge, or otherwise proved up according to law, cannot be considered by an appellate court.

**5. Street railroads ☞85(4)—Instruction on right of way at street intersection approved.**

An instruction that, subject to the statute regulating the right of way at street intersections, a person driving a vehicle has a right to go upon a street for the purpose of crossing, and while so doing has an equal right with a street car company to the use of the street, and that each is required to use the street with a reasonable regard to the safety and convenience of the other, *held* correct.

**6. Appeal and error ☞548(6)—In absence of statement of facts, assignments of error to charge will not be considered.**

As a general rule, in absence of a statement of facts, assignments assailing the charge of the court will not be considered, except when the instructions are so plainly erroneous as to leave no doubt that they controlled the verdict under the pleadings and the facts.

**7. Appeal and error ☞544(1) — Overruling motion for continuance not considered in absence of statement of facts.**

In absence of a statement of facts, overruling a motion for a continuance cannot be considered on appeal.

**8. Evidence ☞539½(2)—Air brake repairer held qualified as an expert as to distance within which a street car can be stopped.**

A witness who was an expert air brake repairer, who testified that he had quite an experience in working on street cars, in handling them, and in stopping them qualified as an expert on questions as to the distance in which a street car could be stopped when running at certain speeds.

**9. Appeal and error ☞548(4)—Refusal of new trial for newly discovered evidence cannot be considered in absence of a statement of facts.**

In absence of a statement of facts, refusing to grant a new trial on the ground of newly discovered evidence cannot be considered on appeal.

Error from District Court, Travis County; George Calhoun, Judge.

Action by Lee Calhoun against the Austin Street Railway Company. From judgment for plaintiff, defendant brings error. Affirmed.

White, Cartledge & Wilcox and Hart & Patterson, all of Austin, for plaintiff in error.

Garrett, Brownlee & Goldsmith, of Austin, W. W. Burnett, of San Marcas, and Brooks, Hart & Woodward, of Austin, for defendant in error.

FLY, C. J. This is a suit for damages arising from personal injuries alleged to have been inflicted upon defendant in error through the negligence of plaintiff in error in causing its street car to collide with a wagon and team which defendant in error was driving across Congress avenue at its intersection with Second street in the city of Austin, Texas. The acts of negligence charged were, running the car south on Congress avenue at a fast, reckless, and dangerous rate of speed with an inexperienced motorman in charge, said speed being in excess of that fixed by a city ordinance, and that plaintiff in error discovered the peril of defendant in error in time to have prevented the collision by the exercise of ordinary care. The cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered in favor of defendant in error for $20,000.

The special issues and answers are as follows:

"Question No. 1. Was the car of the defendant company, at the time it struck the tongue of the wagon or horse or horses driven by the plaintiff at the time of the accident, being run at such a high and dangerous rate of speed as to bring about said collision, under the circumstances existing at the time of the accident?" To which the jury answered "Yes."

"Question No. 2. If you answer question No. 1 in the affirmative, then answer this question: Was the motorman who was in charge of said car of the defendant company at the time of the accident, in running said car at a high and dangerous rate of speed, if he was running said car at said time at a high and dangerous rate of speed, guilty of negligence, as that term has been hereinbefore defined?" To which the jury answered "Yes."

"Question No. 3. If you answer questions Nos. 1 and 2 in the affirmative, then answer this question: Was such negligence of the motorman, if any negligence there was, the direct and proximate cause of the injuries, if any, sustained by the plaintiff?" To which the jury answered "Yes."

"Question No. 4. Was the car of the defendant company, at the time of the accident, being run at a rate of more than 10 miles per hour?" To which the jury answered "Yes."

"Question No. 5. If you answer question No. 4 in the affirmative, then answer this question: Was the running of said car at a greater rate of speed than 10 miles per hour at the time of the accident, if it was being run at a greater rate of speed than 10 miles per hour at said time, the direct and proximate cause of the injuries, if any, sustained by the plaintiff?" To which the jury answered "Yes."

"Question No. 6. Did the motorman in charge of defendant's car see that plaintiff's wagon or team was upon the said street car track, if said wagon or team was upon said track, and realize plaintiff's peril before the accident, and did it become apparent to the motorman who was in charge of defendant's car that there was danger of a collision with the plaintiff just before said collision unless said car was stopped in time to avoid said collision?" To which the jury answered "Yes."

"Question No. 7. If you answer question No.

6 in the affirmative, then answer this question: Did the motorman in charge of said car of the defendant company, at the time he discovered the danger of a collision with plaintiff, if he did discover such danger before the collision, exercise such care, with the means at hand, to stop the car in the shortest time and space possible in order to prevent said collision as an ordinarily prudent person would have used under the same or similar circumstances?" To which the jury answered "No."

"Question No. 8. If you answer question No. 7 in the negative, then answer this question: Was the failure of the motorman in charge of said car of defendant company, after he discovered the danger of a collision with plaintiff, if he did discover the danger, to exercise such care as an ordinarily prudent person would have used under the same or similar circumstances to stop the car in the shortest time and space possible, if he did fail so to do, the direct and proximate cause of the injuries, if any, sustained by plaintiff?" To which the jury answered "Yes."

"Question No. 9. Did the plaintiff, in turning to the left at the intersection of Second street with Congress avenue, fail to pass to the right of and beyond the center of the street intersection before turning to the left on Second street?" To which the jury answered "No."

"Question No. 10. If you answer question No. 9 in the affirmative, then answer this question: Was the failure of the plaintiff in turning to the left at the intersection of Second street with Congress avenue and failing to pass to the right of and beyond the center of the street intersection before turning to the left on Second street, if he did so fail, the direct cause of the injuries sustained by plaintiff at the time of the collision?" To which the jury answered "No."

"Question No. 11. Was the failure of the plaintiff in failing to pass to the right of and beyond the center of the street intersection before turning to the left on Second street, if he did so fail, concurring and co-operating with some act of negligence, if any, on the part of the defendant, the proximate cause of plaintiff's injury?" To which the jury answered "No."

"Question No. 12. Did the plaintiff, in attempting to cross the street car track at the time and place and in the manner he did attempt to cross, fail to exercise ordinary care for his own safety; that is, such care and prudence as an ordinarily careful and prudent person would have used under the same or similar circumstances?" To which the jury answered "No."

"Question No. 13. If you answer question No. 12 in the affirmative, then answer this question: Did the failure of the plaintiff to exercise ordinary care for his own safety in attempting to cross the street car track at the time and place and in the manner he did attempt to cross concur with the negligence, if any, of the defendant's motorman in causing the injury?" To which the jury answered "No."

"Question No. 14. What sum of money, if paid in hand at this time, would fairly and justly compensate the plaintiff, Lee Calhoun, for the injuries sustained by him? In estimating said amount, the jury may take into account the mental and physical pain suffered or that will probably be suffered by the plaintiff (if any) on account of such injuries, the earnings lost by him on account thereof, and the impairment of his ability, if any, to earn money in the future on account of such injuries, if any, and the reasonable amount of the doctor's bills and hospital fees incurred by the plaintiff as the direct and proximate result of the injuries sustained by said plaintiff." To which the jury answered $20,000."

[1] No statement of facts has been filed in this court. There is a voluminous document consisting of questions and answers which is often referred to by appellant as a statement of facts, although it purports to be nothing more than the notes taken at the trial by the official reporter, and is not agreed to by attorneys or counsel for either party, and is not approved by the trial judge. Of course, it does not constitute a statement of facts, and cannot be consulted for any purpose of ascertaining the facts adduced on the trial of the cause. Even if the document in question had been signed by attorneys and approved by the judge, it would not be a narrative of the facts as contemplated by statute and would not be considered. Vernon's Sayles' Rev. Stats. arts. 2068, 2069.

[2] Assignments of error Nos. 1 to 11, inclusive, concern matters of evidence, and, in the absence of a statement of facts, cannot be considered. This proposition is so well settled by numerous decisions of appellate courts that it need not be discussed or authorities cited.

The eighth, ninth, tenth, and eleventh propositions are based on assignments of error 20 to 28, inclusive, and all of the propositions refer to the construction that should be placed upon a certain franchise ordinance passed by the city of Austin. The assignments attack charges given and complain that charges were refused on the question whether the speed of cars was confined to 10 miles an hour, or whether the plaintiff, if he desired to go from a street running east and west across one running north and south and turn to the left on the north and south street, should go to its west side and then turn to the left, or should cross diagonally across the north and south street to its west side, all of which may be very interesting and instructive, but is made quite complicated by an attempt to follow the new rules formulated by the Supreme Court, and also by spreading questions through 18 or 20 assignments of error which could have been easily compressed into not exceeding 2.

[3, 4] This court cannot, in the absence of a statement of facts, entertain the assignments and pass upon an ordinance of the contents of which it can have no lawful knowledge. The ordinance is copied into what is denominated "defendant's bill of exception No. 3," but that document is not signed by any one nor approved by the trial judge.

"It shall be the duty of the party taking any bill of exceptions to reduce the same to writing, and present the same to the judge for his allowance and signature." Article 2063, Rev. Stats.

An appellate court cannot consider a bill of exceptions not approved by the trial judge or otherwise proved up according to law. Gunter v. Merchant (Tex. Civ. App.) 172 S. W. 191; Hall v. Ray (Tex. Civ. App.) 179 S. W. 1135; Railway v. Samford (Tex. Civ. App.) 181 S. W. 857; Holloman v. Black (Tex. Civ. App.) 188 S. W. 973; Railway v. Faulkner (Tex. Civ. App.) 194 S. W. 651.

[5] The forty-first assignment of error complains of subdivision 6 of the court's charge, which it is claimed "in effect instructed the jury that there is no such thing as one person having the preference right over another at crossings." The charge in question did not give such instruction to the jury, but after giving the law, state and municipal, as to the rights of vehicles at street intersections, it then informed the jury:

"That subject to said statute regulating the right of way to a vehicle approaching such intersection from the right of another vehicle, that a person driving a vehicle has a right to go upon a street for the purpose of crossing, and while so doing he has an equal right with those of a street car company on such to the use of the street, Each is required to use the street with a reasonable regard to the safety and convenience of the other."

As qualified, the charge is not obnoxious to the decisions in San Antonio Traction Co. v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 64, Baker v. Collins (Tex. Civ. App.) 199 S. W. 519, and Southern Traction Co. v. Kirksey (Tex. Civ. App.) 222 S. W. 702, cited by plaintiff in error. Whether the charge of the court under the facts in the case could have injuriously affected plaintiff in error is not ascertainable in the absence of a statement of facts.

[6] The general rule is that assignments assailing the charge of the court will not be considered in the absence of a statement of facts; the only exception to such rule, so far as we know, being when the instructions are so plainly and palpably erroneous as to leave no doubt that they controlled the verdict, under the pleadings and the facts. McGaughey v. Bendy, 27 Tex. 535; Railway v. McAllister, 59 Tex. 349; Luna v. Railway (Tex. Civ. App.) 73 S. W. 1061.

Assignments of error 52, 55, 56, and 57 are overruled. The issues submitted by the court as to discovered peril are not subject to the criticism made of them, and submitted every phase of the matter so far as can be ascertained without a knowledge of the facts, and the court properly refused the special charge requested.

Assignments of error 53 to 64 and 67, 68, 86, and 87, inclusive, are based upon facts which are not disclosed by a statement of facts and are overruled.

[7] A motion for a continuance which was overruled cannot be made the basis of an assignment of error in the absence of a statement of facts. Assignments of error 79, 80, and 81 are consequently overruled. Love v. State, 67 Tex. Cr. R. 593, 150 S. W. 183.

[8] Assignment of error 82 complains of the admission of the evidence of Elmer Burnet, a witness for plaintiff in error, upon a cross-examination by defendant in error. The evidence is set out in a bill of exceptions and is objected to on the ground that the witness was not shown to be an expert as to the distance in which street cars could be stopped when running at certain speeds. The witness swore that he had quite an experience not only in working on street cars, but also in handling them and in stopping them. He was an expert air brake repairer. The witness qualified as an expert.

[9] The eighty-eighth assignment of error contains a complaint of the action of the court in refusing to grant a new trial on the ground of newly discovered testimony of one Abe Everhard. Without a statement of facts to test the pertinency and materiality of the newly discovered evidence, the assignment of error has no basis upon which to rest.

The judgment is affirmed.